UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARREN HENDERSON,<br>　　　　Plaintiff,<br>　v.<br>J. LEWIS, et al.,<br>　　　　Defendants. | Case No.17-cv-06977-HSG<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 45, 49, 60 |

## INTRODUCTION

Plaintiff, an inmate at California State Prison, Sacramento ("CSP-SAC") filed this *pro se* civil rights action under 42 U.S.C. § 1983 alleging that prison officials at Salinas Valley State Prison ("SVSP") where he was previously incarcerated were deliberately indifferent to his serious medical needs when they failed to provide him with diabetic snacks. Now before the Court are plaintiff's and defendants' cross-motions for summary judgment. For the reasons set forth below, defendants' motion for summary judgment is GRANTED and plaintiff's motion for summary judgment is DENIED.

## BACKGROUND

The following factual allegations are undisputed unless stated otherwise. Plaintiff is diabetic and takes insulin for his diabetes. He was incarcerated at SVSP from May 27, 2016 to January 12, 2017. While at SVSP his blood sugar levels were checked twice per day, and he was prescribed glucose pills to take if he felt symptoms of hypoglycemia (low blood sugar). Plaintiff requested that he be given a daily diabetic snack (two packages of cheese and crackers or peanut butter and crackers plus one fresh fruit) in order to eat the snack if he felt signs of hypoglycemia.

This request was denied as not medically indicated.

Plaintiff was seen by medical provider Dr. Tuvera three times while he was at SVSP: on June 1, 2016; July 1, 2016; and September 30, 2016. (Defendants' Mot. For Summary Judgment ("MSJ"), Tuvera Decl., ¶ 2.) At each appointment, Dr. Tuvera noted that plaintiff had, among other conditions, type 2 diabetes and obesity. (*Id*. at ¶ 3; Ex. A.) At the first appointment, Dr. Tuvera discussed with plaintiff the importance of taking glucose gel (also referred to as glucose tablets) if he experienced symptoms of hypoglycemia. (*Id*. at ¶ 6; Ex. A.) At the second and third appointments Dr. Tuvera noted that plaintiff had no hypoglycemia. (*Id*. at Exs. B and C.)

On June 1, 2016, plaintiff submitted health care appeal SVSP-HC-16055478. (MSJ, Gamboa Decl., Ex. A.) In this appeal plaintiff requested that he be given a diabetic snack, arguing that it was mandatory under *Plata*[1] and that SVSP was withholding the snack from insulin-dependent diabetics as a form of punishment. (*Id.*) He requested that SVSP acknowledge his previous prescribed treatment of a daily snack which began in 2005, and declare that the policy of not issuing diabetic snacks violated *Plata*. (*Id.*)

The first level response, issued by Dr. Fu and defendant Gamboa, partially granted plaintiff's request, referring him to the dietician for an assessment regarding diabetic snacks and to his primary care provider for a diabetes assessment. (Defendants' MSJ, Gamboa Decl., Ex. B.) Plaintiff appealed to the second level of administrative review, stating he was dissatisfied and still not receiving a diabetic snack, and that SVSP was in breach of *Plata*. (*Id*. at Ex. A.)

The second level response issued by defendant Kumar states that plaintiff's second level appeal indicated that he was still waiting to be seen for his diabetic assessment. (Defendants' MSJ, Kumar Decl., Ex. D.) Because records showed that he was seen for the assessment on July 1, 2016, Kumar ultimately granted the second level appeal. (*Id.*)

Plaintiff appealed to the third level of review stating that despite the second level decision granting his appeal, he was still not receiving a diabetic snack, and stating that under *Plata* CDCR

---

[1] The Court assumes that plaintiff is referring to the Stipulation for Injunctive Relief entered in 2002 in *Plata v. Davis*, Case No. 3:01-cv-01351-TEH. Plaintiff makes allegations throughout his motion that SVSP's policies violate *Plata*, but these vague allegations do not create a genuine issue of material fact that would preclude summary judgment for defendants.

2

doctors and dieticians have no discretion in determining a course of action concerning nourishment for inmates treated with insulin. (Defendants' MSJ, Gamboa Decl., Ex. A.) The appeal was denied at the third level of review. (Defendants' MSJ, Lewis Decl., Ex. 1.) The third level decision was signed by S. Gates for Lewis and stated that plaintiff had been seen by both his primary care provider and a dietician and that neither recommended a diabetic snack. (*Id.*)

Plaintiff's second health care appeal, SVSP-HC-16056045, submitted on August 10, 2016 stated that a nurse named "Rodriqez" was denying him diabetic snacks and saying that it did not matter that his appeal was granted. (Defendants' MSJ, Gamboa Decl., Ex. C.) Plaintiff requested that SVSP recognize Volume 4 Medical Services, Chapter 20A and 20B, which he asserted required that all inmates treated with insulin receive diabetic snacks. (*Id.*)

At the first level of review Dr. Fu and Gamboa partially granted the appeal as to recognizing Chapter 20 of Volume 4 Medical Services, but denied plaintiff's request for a diabetic snack. (*Id.* at Ex. D). The decision notes that plaintiff was assessed by a primary care physician and dietician, neither of whom recommended a snack; that plaintiff had not received a snack for several months; and that the dietician was not able to successfully discuss the matter with him and had to terminate the appointment. (*Id.*)

Plaintiff appealed to the second level of review, stating that his interview with dietician Watson had ended without incident, and that SVSP's refusal to give diabetic inmates a snack was deliberate indifference to a serious medical need. (*Id.* at Ex. B.) Plaintiff asserted that SVSP was in violation of *Plata* and had implemented a discretionary policy in place of *Plata's* mandatory policy.

At the second level of review, Kumar and another reviewer, B. Brizendine, denied the request for a diabetic snack and granted the request to recognize Volume 4, Chapters 20A and 20B. (Defendants' MSJ, Kumar Decl., Ex. F.) Plaintiff appealed the second level decision, arguing that his blood sugar was not well controlled, that prior prisons had always honored his standing order for a diabetic snack, and that SVSP's policy to deny diabetic snacks was not an individual diagnosis but rather a policy that was applied to all diabetic inmates as a form of punishment. (Defendants' MSJ, Gamboa Decl., Ex. B.)

3

At the third level of review this appeal was denied, again by S. Gates for Lewis. (Defendants' MSJ, Lewis Decl., Ex. 2.) The decision states that that the policies in Volume 4 Chapter 20.2 are that a diabetic snack may be issued to patients with juvenile onset type 1 diabetes mellitus or brittle diabetes with indication, but that diabetic snacks are not indicated as mandatory. (*Id*.) Further, the decision states that the request for a snack is duplicative of plaintiff's request in his other administrative appeal which was already decided at the third level, and therefore would not be addressed again in the appeal response. (*Id*.)

**DISCUSSION**

**A.     Standard of Review**

Summary judgment is proper where the pleadings, discovery and affidavits show there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See id.*

A court shall grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial[,] . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party bears the initial burden of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Id.* The burden then shifts to the nonmoving party to "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *See id.* at 324 (citing Fed. R. Civ. P. 56(e) (amended 2010)). The nonmoving party must show more than "the mere existence of a scintilla of evidence." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Liberty Lobby*, 477 U.S. at 252). "In fact, the non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's

4

favor." *Id.* (citing *Liberty Lobby,* 477 U.S. at 252). If the nonmoving party fails to make this showing, "the moving party is entitled to judgment as a matter of law." *Celotex Corp.*, 477 U.S. at 323.

For purposes of summary judgment, the court must view the evidence in the light most favorable to the nonmoving party; if the evidence produced by the moving party conflicts with evidence produced by the nonmoving party, the court must assume the truth of the evidence submitted by the nonmoving party. *See Leslie v. Grupo ICA*, 198 F.3d 1152, 1158 (9th Cir. 1999). The court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a disputed material fact. *See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). When, however, "opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). When the parties file cross-motions for summary judgment, the court must consider all of the evidence submitted in support of both motions to evaluate whether a genuine issue of material fact exists precluding summary judgment for either party. *The Fair Housing Council of Riverside County, Inc. v. Riverside Two*, 249 F.3d 1132, 1135 (9th Cir. 2001).

**B.     Exhaustion**

Defendants Kumar, Lewis, and Gamboa assert that plaintiff failed to exhaust his claims against them because he did not name them or bring any claim of wrongdoing against them in his administrative appeals. Defendants have not, however, met their burden to show that plaintiff failed to exhaust his claims.

**1.     Standard**

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Compliance with the exhaustion requirement is mandatory. *Porter v. Nussle*, 534 U.S. 516, 524 (2002); *Booth v. Churner*, 532 U.S. 731, 739-40

& n.5 (2001). All available remedies must be exhausted; those remedies "need not meet federal standards, nor must they be 'plain, speedy, and effective.'" *Porter,* 534 U.S. at 524.

Exhaustion of available remedies is a prerequisite to suit even if the prisoner seeks relief not available in grievance proceedings, such as money damages. *Booth*, 532 U.S. at 741. Section 1997e(a) requires "proper exhaustion" of available administrative remedies. *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). Proper exhaustion requires using all steps of an administrative process and complying with "deadlines and other critical procedural rules." *Id.* at 90. "[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218 (2007).

The failure to exhaust administrative remedies is an affirmative defense that must now be raised in a motion for summary judgment. *See Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) (en banc). In bringing such a motion, the defendant has the initial burden to prove "that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy." *Id.* at 1172. If the defendant carries that burden, "the burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Id.* The ultimate burden of proof remains with the defendant, however. *Id.* "If material facts are disputed, summary judgment should be denied, and the district judge rather than a jury should determine the facts." *Id.* at 1166.

The California Department of Corrections and Rehabilitation ("CDCR") provides its inmates and parolees the right to appeal administratively "any policy, decision, action, condition, or omission by the department or its staff that the inmate or parolee can demonstrate as having a material adverse effect upon his or her health, safety, or welfare." 15 Cal. Code Regs. § 3084.1(a). Generally, an inmate must submit the appeal within thirty days of the "occurrence of the event or decision being appealed, or . . . [u]pon first having knowledge of the action or decision being appealed, or . . . [u]pon receiving an unsatisfactory departmental response to an appeal filed." *Id.* § 3084.8(b). In order to exhaust available administrative remedies within this system, a prisoner must proceed through three formal levels of appeal and receive a decision from the Secretary of

6

the CDCR or his designee. *Id.* § 3084.1(b), § 3084.7(d)(3). "The third level review constitutes the decision of the Secretary of the California Department of Corrections and Rehabilitation on an appeal, and shall be conducted by a designated representative under the supervision of the third level Appeals Chief or equivalent. The third level of review exhausts administrative remedies; however, this does not preclude amending a finding previously made at the third level." *Id.* § 3084.7(d)(3).

California prison regulations require the grievance to "describe the specific issue under appeal and the relief requested," "all staff member(s) involved and [] describe their involvement in the issue," and "state all facts known and available to [the inmate] regarding the issue being appealed" at the time the grievance is submitted. 15 Cal. Code Regs. § 3084.2(a).

If an inmate's grievance does not comply with a procedural rule but prison officials decide it on the merits anyway at all available levels of administrative review, it is exhausted. *Reyes v. Smith*, 810 F.3d 654, 656, 658 (9th Cir. 2016) (agreeing with all circuits to consider the issue). Thus, the California inmate in *Reyes* whose grievance failed to name all staff members involved in his case, as required by 15 Cal. Code Regs. § 3084.2(a), nevertheless exhausted his claim of deliberate indifference to his serious medical needs because that claim was decided on its merits at all levels of review. *See id.* at 656-57.

**2. Analysis**

Defendants argue that to exhaust his claims against Kumar, Lewis, and Gamboa, plaintiff was required to bring a separate appeal challenging Kumar, Lewis, and Gamboa's denial of his appeals seeking diabetic snacks, citing to *Frost v. Hallock*, 2019 WL 1102379, at *7 (N.D. Cal. March 3, 2019). *Frost* is inapplicable here. In *Frost*, the plaintiff-inmate argued that the prison officials reviewing his appeal violated his due process rights when they denied his appeal challenging the discipline he received for participating in a hunger strike. The legal claim, a due process violation in handling the appeal, was distinct from the subject of the appeal, challenging the discipline. Here, plaintiff's claim is that Kumar, Lewis, and Gamboa were deliberately indifferent to his serious medical needs when they denied him diabetic snacks by denying his appeals requesting these snacks.

7

Both of plaintiff's administrative appeals provided Kumar, Lewis, and Gamboa notice of plaintiff's claim that he was being denied diabetic snacks that he required to treat a serious medical need. Both these appeals were exhausted. His first appeal, SVSP-HC-16055478, was decided on the merits at the highest level of review. His second appeal, SVSP-HC-16056045, was partially decided on the merits and partially found to be duplicative of the first appeal. Bringing a separate grievance against the reviewers for denying his administrative appeals seeking the snacks would be duplicative. Accordingly, defendants have not met their burden of showing that plaintiff failed to exhaust his claims against Lewis, Kumar and Gamboa.

**C.     Deliberate Indifference to Serious Medical Needs**

Plaintiff claims that reviewers Lewis, Kumar and Gamboa, Watson (the dietician that evaluated him) and J. Rodriguez (a nurse who provided him care), all violated his Eighth Amendment rights by not providing him a diabetic snack. Plaintiff asserts that he experienced over 40 episodes of hypoglycemia while at SVSP and needed the snack to control his blood sugar. He asserts that he had a prior prescription for a diabetic snack, was given a diabetic snack at the prisons where he was incarcerated before and after his time at SVSP, and that a diabetic snack is mandatory under the prison medical guidelines. Plaintiff also asserts that while he did have a prescription for glucose pills at SVSP, once he finished it the nurses from whom he requested a refill refused to give it to him.

The defendants argue that they are entitled to summary judgment in their favor because plaintiff did not have a serious medical need for snacks. However, plaintiff's serious medical need was his diabetes. The question is whether the defendants' refusal to provide him diabetic snacks constituted deliberate indifference to this serious medical need in violation of the Eighth Amendment.

Defendants Watson, Kumar, and Gamboa assert that a diabetic snack was not medically indicated for plaintiff due to his weight, that the prescribed glucose pills were the proper prescription for plaintiff to use in controlling his blood sugar levels and they were unaware of anyone refusing to refill the prescription, and that plaintiff's diabetes treatment was in accordance with prison health care guidelines. And Lewis asserts that she was not personally involved in

8

denying plaintiff's appeals, while Rodriguez argues that he is not the correct defendant because he is a male nurse and plaintiff asserts that the "Nurse Rodriguez" who provided him medical care was female.

### 1. Standard

Deliberate indifference to a serious medical need violates the Eighth Amendment's proscription against cruel and unusual punishment. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled on other grounds, WMX Techs, Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc). A determination of "deliberate indifference" involves an examination of two elements: the seriousness of the prisoner's medical need and the nature of the defendant's response to that need. *See McGuckin*, 974 F.2d at 1059.

A "serious" medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain." *McGuckin*, 974 F.2d at 1059 (citing *Estelle*, 429 U.S. at 104).

A prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). The prison official must not only "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but he "must also draw the inference." *Id.* If a prison official should have been aware of the risk but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk. *Gibson v. County of Washoe*, 290 F.3d 1175, 1188 (9th Cir. 2002), *overruled on other grounds*, *Castro v. County of Los Angeles*, 833 F.3d 1060, 1076 (9th Cir. 2016). Mere negligence, or even gross negligence, is not enough. *Farmer*, 511 U.S. at 835–36 & n.4.

A claim of medical malpractice or negligence is insufficient to make out a violation of the Eighth Amendment. *McGuckin*, 974 F.2d at 1059. Nor does "a difference of opinion between a prisoner patient and prison medical authorities regarding treatment" amount to deliberate indifference. *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981). In order to prevail on a claim involving choices between alternative courses of treatment, a plaintiff must show that the

course of treatment the defendant chose was medically unacceptable under the circumstances and that he or she chose this course in conscious disregard of an excessive risk to plaintiff's health. *Toguchi v. Chung*, 391 F.3d 1051, 1058 (9th Cir. 2004); *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996) (citing *Farmer*, 511 U.S. at 837).

### 2. Watson

The undisputed record shows that Watson took reasonable steps to address plaintiff's serious medical need. Watson, a registered dietician, met with plaintiff to evaluate his request for a diabetic snack on July 13, 2016. (Defendants' MSJ, Watson Decl., ¶ 10.) After reviewing plaintiff's medical records and meeting with plaintiff, Watson advised against a diabetic snack. (*Id.* at ¶ 13.) Watson concluded that given plaintiff's weight, his type 2 diabetes, and his generally good control of his blood sugar levels, a snack would not be beneficial for his health and the already-prescribed glucose tablets were a better option for hypoglycemia relief. (*Id.* at ¶¶ 11-13.) Plaintiff did not inform Watson that he had taken all his glucose pills and was denied a refill, so Watson was unaware of this allegation. (Defendants' Reply, Watson Decl. ¶ 3.) Indeed, the record does not show that plaintiff informed anyone that he was being denied a prescription refill, and his medical records show that the prescription was filled on June 2, 2016, and again on June 15, 2016. (Defendants' MSJ, Ruhparwar Decl., Ex. G.)

In recommending against a snack, Watson also took into account the policies and procedures set forth in California Correctional Health Care Services' ("CCHCS") Inmate Medical Services Program Policy and Procedures ("IMPP"), Volume 4, Chapter 20, Sections 4.20.1., 4.20.2, SVSP Local Operational Procedure, CCHCS Care Guide: Diabetes, and the recommendations from the Academy of Nutrition and Dietetics, the American Diabetes Association, and peer reviewed articles. (Defendants' MSJ, Watson Decl., ¶¶ 4-8.)

Plaintiff asserts that he is entitled to summary judgment because diabetic snacks were mandatory for him, both under general prison guidelines and in his individual case. The record contradicts Plaintiff's assertions. The version of the IMPP Volume 4, Chapter 20 in effect at the time that plaintiff was at SVSP did not require snacks for all insulin-dependent diabetics. It provides that "[d]iet instruction, outpatient therapeutic diets, nourishments, and supplements shall

be provided as medically indicated," and that patients must have "juvenile onset type 1 diabetes mellitus or brittle diabetes" to qualify for nourishments or supplements, except in special situations.[2] (Defendants' MSJ, Ruhparwar Decl., Ex. C). The version of the policies that plaintiff submitted and referred to in his filings is not the version effective during the relevant time period. The CCHCS Care Guide: Diabetes states that "patients who are prone to hypoglycemia should have access to glucose tablets, glucose gel, or a diabetic snack." (*Id*. at Ex. D.) There is no triable issue of fact showing that defendants, including Watson, did not follow the guidelines that were current at the time plaintiff was at SVSP. And, as discussed *supra*, Watson concluded that plaintiff's specific health factors indicated glucose tablets were a better option for hypoglycemia relief. A difference of opinion regarding medical treatment does not constitute deliberate indifference. *See Toguchi*, 391 F.3d at 1058.

Accordingly, the evidence in the undisputed record reflects no genuine dispute of material fact that would preclude a grant of summary judgment in favor of Watson.

**2.     Gamboa**

Plaintiff asserts that as a first level reviewer of his health care appeals, Gamboa was deliberately indifferent because he denied plaintiff's request for a diabetic snack. The undisputed record shows that Gamboa took reasonable steps to address plaintiff's serious medical need and his decision did not disregard a risk of harm to plaintiff. Gamboa based his denial on the prison medical guidelines, Dr. Fu's findings and recommendations, Dr. Fu's interview with plaintiff, and plaintiff's medical records. (Defendants' MSJ, Gamboa Decl., ¶¶ 8-9, 11-13, Fu Decl., ¶¶ 4-11.)

---

[2] The Court notes that in his deposition plaintiff stated that he has type 1 diabetes. (Plaintiff's Opp. to Defendants' MSJ, Ex. C, ECF No. 52 at 60.) However, all the documents in the record, including the declarations of his examining doctors at SVSP, reflect that plaintiff had a diagnosis of type 2 diabetes, and there is no allegation that plaintiff informed defendants that this diagnosis was incorrect. Defendants made their decisions based on plaintiff's medical records, recommendations from his doctors, and the prison guidelines and policies. The guidelines at issue state that special nourishment such as diabetic snacks shall be provided as medically indicated, so even if plaintiff had a diagnosis of type 1 diabetes, a snack had to be medically indicated to be prescribed. In any event, plaintiff does not argue that he should have been given a snack because he has type 1 diabetes: he argues that he should have been given a snack because he is insulin dependent. Thus, the Court finds that plaintiff's statement in his deposition does not create a genuine issue of material fact.

11

In reviewing Plaintiff's appeal, Gamboa took reasonable steps to address plaintiff's medical needs by seeking more information. Gamboa ordered an evaluation by plaintiff's primary care doctor and a dietician to assess whether a diabetic snack was recommended for plaintiff. Although plaintiff asserts that he has always been given a diabetic snack while incarcerated, except for his time at SVSP, he does not dispute that in 2013, while incarcerated at a different prison, he was removed from the diabetic snack list. The record also reflects that both in 2005 and 2013 plaintiff filed administrative appeals seeking diabetic snacks from the prisons where he was incarcerated, and these appeals were denied with findings that a snack was not medically indicated. (Defendants' MSJ, Rhupawar Decl., ¶¶ 9-10.) Plaintiff's medical records from January 1, 2010 through August 3, 2018, did not indicate that he had a prescription for a diabetic snack when he arrived at SVSP or at any time while at SVSP. (*Id*. at ¶ 7.) Plaintiff has submitted what appears to be a 2005 prescription for a diabetic snack from another institution. (Plaintiff's Opp. to Defendants' MSJ, Ex. E, ECF No. 52 at 88.) Although defendants object to this exhibit as unauthenticated, this dispute is not material because even if plaintiff did have a prescription for a snack in 2005, Gamboa's decision to order an evaluation from a primary care provider and dietician in response to the request for a snack does not show deliberate indifference, even if plaintiff once had a snack prescription or did at times receive snacks at other prisons. *See Toguchi*, 391 F.3d at 1058-60.

In response to the second appeal, Gamboa explained in denying the request that neither plaintiff's primary care doctor nor dietician recommended a diabetic snack. There is no evidence in the record that Gamboa was aware of any allegation by plaintiff that he had requested refills to his glucose pills and that his request was denied. In sum, although plaintiff disagrees with Gamboa's conclusions and decision to deny his appeals at the first level, Gamboa took reasonable steps to address plaintiff's serious medical needs and a difference of opinion regarding medical treatment does not constitute deliberate indifference. *See Toguchi*, 391 F.3d at 1058. There is no evidence in the record that would preclude a grant of summary judgment in Gamboa's favor.

**3. Kumar**

Plaintiff asserts that as the second level reviewer of his health care appeals, Kumar was

deliberately indifferent because he denied plaintiff's requests for a diabetic snack. Kumar granted plaintiff's appeal insofar as plaintiff wanted to ensure he was seen by his primary care doctor as previously ordered, but denied the request for snacks.

The undisputed record shows that Kumar took reasonable steps to address the serious medical need, as his second level denials were based on a review of plaintiff's medical records, the recommendations of his primary care doctors, and the prison medical guidelines. (Defendants' MSJ, Kumar Decl. ¶¶ 8-10.) Based on Kumar's review, plaintiff's request for diabetic snacks was not medically indicated as he did not have type 1 or brittle diabetes, and it was not recommended by plaintiff's doctor or dietician. (*Id*.) There is no evidence in the record that Kumar was aware of any allegation by plaintiff that he had requested refills to his glucose pills and that his request was denied. Although plaintiff disagrees with Kumar's conclusions and decision to deny his appeals at the second level, a difference of opinion regarding medical treatment does not constitute deliberate indifference. *See Toguchi*, 391 F.3d at 1058. There is no evidence in the record that precludes summary judgment in Kumar's favor.

### 4. Lewis

Plaintiff asserts that as the third level reviewer of both of his health care appeals, Lewis was deliberately indifferent because she denied plaintiff's request for a diabetic snack. Lewis, as the former Deputy Director, Policy and Risk Management Services at CCHCS, is named on the third level decisions for both of plaintiff's health care appeals, but she was not personally involved in deciding either appeal. There was a broad delegation of authority in place that allowed for managers to prepare and sign CCHCS's third level decision on Lewis' behalf. (Defendants' MSJ, Lewis Decl., ¶ 8.) Lewis' responses were prepared and signed by S. Gates. (*Id*. at ¶¶ 6-10.) She did not approve the responses, speak to S. Gates about the responses, or instruct S. Gates as to the content of the responses. *Id*.

The undisputed record contains no evidence that Lewis was personally involved in plaintiff's healthcare or the decision to deny plaintiff's requests for a diabetic snack. Therefore she cannot be held liable for any alleged violation of plaintiff's rights. "Liability under section 1983 arises only upon a showing of personal participation. A supervisor is only liable for

13

constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (internal citation omitted). There is no evidence in the record that would create a genuine issue of material fact as to Lewis' personal participation in plaintiff's health care or in any violation of his rights that would preclude a grant of summary judgment in Lewis' favor.

### 5. J. Rodriguez

In his amended complaint plaintiff alleged that a nurse "Rodriqez" saw him daily and she refused to give him a diabetic snack despite his hypoglycemic episodes. After being notified that no nurse by that name was employed at SVSP, but there was a nurse by the name of J. Rodriguez, plaintiff confirmed that J. Rodriguez was the nurse he intended to sue. LVN J. Rodriguez, however, moves for summary judgment on the grounds that he is the wrong defendant: he is male and all of plaintiff's allegations are against a female nurse. While plaintiff continues to assert that it was a female nurse named Rodriguez who provided his medical care and is the subject of his claims, the undisputed record shows that there was only one nurse by the name of J. Rodriguez at SVSP during the time plaintiff was incarcerated there, and that this person is male. (Defendants' MSJ, Rodriguez Decl., ¶ 3, Nunez Decl., ¶ 2.) Accordingly, summary judgment is granted in favor of J. Rodriguez as the undisputed record shows that he was not the nurse who had the interactions with plaintiff that are the subject of plaintiff's claims.

### D. Qualified Immunity

The defense of qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). To determine whether a government official is entitled to qualified immunity, courts must consider (1) whether the official's conduct violated a constitutional right, and (2) whether that right was "clearly established" at the time of the alleged misconduct. *See Pearson v. Callahan*, 555 U.S. 223, 232-236 (2009) (overruling the sequence of the two-part test that required determination of a deprivation first and then whether such right was clearly

14

established, as required by *Saucier v. Katz*, 533 U.S. 194 (2001)). Courts may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id*. at 236.

As discussed above, the undisputed record gives rise to no genuine issue of fact as to whether defendants were deliberately indifferent to plaintiff's serious medical needs when they denied his requests for a diabetic snack. Defendants thus are entitled to summary judgment in their favor on the defense of qualified immunity because the Court has found that no constitutional violation occurred. *See Aguilera v. Baca*, 510 F.3d 1161, 1167 (9th Cir. 2007) ("If we determine . . . that no constitutional violation occurred, the qualified immunity inquiry is at an end.").

## CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is GRANTED, and plaintiff's motion for summary judgment is DENIED.

Defendant's motion to strike plaintiff's sur-reply is GRANTED.[3]

This order terminates Dkt. Nos. 45, 49, and 60.

The Clerk shall enter judgment for defendants and close the file.

**IT IS SO ORDERED.**

Dated: 9/10/2019

HAYWOOD S. GILLIAM, JR.
United States District Judge

---

[3] The Court has reviewed the sur-reply and determined that even were it to consider the sur-reply, that filing would not affect the outcome of the case.